UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 08-00561-TLM |
| **PATRICK FRANKLIN GANIER** ) | |
| **and MARCIE CSEPLO GANIER,** ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| ) | |
| **JEREMY GUGINO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 08-06058-TLM |
| ) | |
| **PAUL ORLANDO, PATRICK** ) | |
| **FRANKLIN GANIER, and MARCIE** ) | |
| **CSEPLO GANIER,** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**

**INTRODUCTION**

The chapter 7 trustee, Jeremy Gugino ("Trustee") filed this adversary proceeding to obtain a judgement avoiding certain prebankruptcy transfers made by debtors, Patrick Franklin Ganier and Marcie Cseplo Ganier ("Debtors") as

MEMORANDUM OF DECISION - 1

fraudulent. *See* § 548(a).[1] Debtors responded with a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012, alleging Trustee "failed to state a claim for which relief may be granted." *See* Doc. No. 3 ("Motion"). The Motion was briefed, argued, and taken under advisement.[2]

The Court determines that the Motion will be denied.

## STANDARD

Rule 12 provides in pertinent part:

> **(b) How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
> . . .
> (6) failure to state a claim upon which relief can be granted.
> . . .
> **(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12.

Debtors filed an "affidavit" in support of the Motion. *See* Doc. No. 5. The

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] Trustee sued not just Debtors but also an individual, Paul Orlando, who allegedly received certain of the transfers, contending that recovery could be had against Orlando as an initial transferee under § 550(a). Orlando has not answered the complaint, and is not party to the Motion.

MEMORANDUM OF DECISION - 2

affiant is Debtors' counsel, and the affidavit does nothing more than provide copies of pleadings and papers in the underlying chapter 7 case file (schedules, statement of financial affairs, a Rule 2004 motion and order, and a copy of the court docket). Consideration of this material does not require that the motion be construed or considered as a motion for summary judgment under Rule 12(d). *Gibson v. Ada County*, 2008 WL 4889895 at *2 (D. Idaho Nov. 12, 2008).[3]

The Court therefore analyzes the Motion under Rule 12(b)(6), not Rule 56, standards.

In *Gibson*, the Idaho District Court noted that, in light of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint attacked under Rule 12(b)(6) needs to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and does not need detailed factual allegations, though it must set forth more than mere labels and conclusions. *Gibson*, 2008 WL 4889895 at *1.[4] Under *Twombly*, the factual

---

[3] The Idaho District Court held that under Rule 12(b)(6), a court may consider matters that are subject to judicial notice, without transforming the motion to dismiss into one for summary judgment under Rule 12(d). *Id.* (citing *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987), and *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004)).

[4] There was a prior and oft-quoted Rule 12(b)(6) standard. As stated in *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1222 (9th Cir. 2002):

> A motion to dismiss for failure to state a claim should only be granted if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46,

(continued...)

MEMORANDUM OF DECISION - 3

allegations must be sufficient "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at ___, 127 S. Ct. at 1965. It further explains:

> [a]sking for plausible grounds to infer [a claim] does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

*Id.* (quotations omitted).[5]

These standards are applied by the Court to the Motion and the underlying complaint.

---

[4](...continued)
78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *see also* [*Blyler v. Hemmeter (In re Hemmeter)*], 242 F.3d [1186 (9th Cir. 2001)] at 1189.

*See also North Slope Borough v. Rogstad (In re Rogstad)*, 126 F.3d 1224, 1228 (9th Cir. 1997); *Educ. Credit Mgmt. Corp. v. McBurney (In re McBurney)*, 357 B.R. 536, 539 (9th Cir. BAP 2006). The bankruptcy court in *Miller v. McDougal Bros. Invs.*, 2008 WL 4224504 (Bankr. D. Or. Sept. 15, 2008), suggests that *Twombly* "supercedes" the *Conley* standard. *Id.* at *2 n.2. This is a fair characterization. The Supreme Court noted that *Conley* had been read and applied too literally and without respecting the context in which it was written. Therefore, the Supreme Court concluded in *Twombly* that the *Conley* construct had been "questioned, criticized, and explained away long enough" and "after puzzling the legal profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard[.]" 550 U.S. at ___, 127 S. Ct. at 1968-69.

[5] *Gibson* also observed that a dismissal under the Rule "may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery." No such impediment is found here. Even if it were, *Gibson* finds that a "dismissal without leave to amend is improper unless it is beyond doubt that the complaint 'could not be saved by any amendment.'" *Gibson*, 2008 WL 4889895 at *1-*2 (citations omitted).

MEMORANDUM OF DECISION - 4

**FACTS**[6]

On March 28, 2008, Debtor filed a joint petition for relief under chapter 7. Their schedules and statement of financial affairs were filed two weeks later, on April 11. Debtors disclosed on schedule B, among other assets, $2,500 in an Edward Jones IRA. This asset was claimed as exempt under Idaho Code 11-604A on Debtors' schedule C.[7] The exemption was not contested.[8]

Trustee's complaint notes that Debtors received tax refunds for 2005, 2006 and 2007 in March, 2008 – just prior to filing their March 28, 2008, bankruptcy petition – collectively totaling $60,195.00.[9] Trustee alleges that the tax refunds represent substantially all of Debtors' non-exempt and unencumbered assets at the time.

---

[6] Factual "findings" are, of course, improper in a Rule 12 situation, but recitations of salient factual assertions in the complaint are acceptable. *See Hemmeter*, 242 F.3d at 1189 n.1. The Court here sets out these "facts" only for context in applying the Rule 12(b)(6) standards to the allegations in the complaint.

[7] Debtors also disclosed as assets $11,128.37 in a Kindred Human Resources 401(k) and $37,718.25 in a New York Life Insurance and Annuity Corporation IRA, and claimed both as exempt under Idaho Code § 11-604A. Trustee makes no improper transfer assertions related to these two accounts.

[8] The exemption is therefore allowed. *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992) (holding that a debtor's claimed exemption, even if wholly without merit and devoid of a statutory basis, was nevertheless allowable because the objecting party did not file an objection until well past the Rule 4003(b) thirty-day deadline); *see also Rainsdon v. Farson (In re Farson)*, 387 B.R. 784, 797 (Bankr. D. Idaho 2008).

[9] The statement of financial affairs bears out the assertion. *See* Case No. 08-00561-TLM at Doc. No. 15. Trustee's complaint alleges that the tax refunds were received on March 8, 2008. The statement of financial affairs indicates only that they were received in "3/08."

MEMORANDUM OF DECISION - 5

According to Trustee, on March 28, only hours prior to filing, $2,500.00 of these tax refunds were deposited to create the Edward Jones IRA account. Debtors did not disclose this transfer in their statement of financial affairs. Trustee contends that this transfer of nonexempt funds into an exempt retirement account is subject to avoidance under § 548(a) as a transfer made with actual intent to hinder, delay or defraud creditors.

Trustee also alleges that between February 23 and March 28, 2008, Debtors made a series of transfers to Defendant Paul Orlando totaling $29,625.00.[10] No transfers to Orlando were disclosed in the statement of financial affairs. Orlando is disclosed, however, on Debtors' schedule D as a secured creditor holding a "3/08" deed of trust on Debtors' property located at 3874 S. Milan Way, Meridian, Idaho. Trustee alleges that the first three transfers were a "down payment" on Debtors' purchase of the residence and that the last, $5,625.00, represented "prepayment" of April, May and June mortgage installments. Debtors' schedules value that property at $325,000.00 and assert Orlando's claim is $300,000.00. Debtors claim the Milan property as their homestead and the equity therein exempt up to a maximum of $100,000.00.[11] Trustee alleges that the transfers of

---

[10] The transfers were: February 23 ($750.00); March 7 ($10,000.00); March 14 ($13,250.00); and an unspecified day in March, but prior to March 28 ($5,625.00).

[11] As with the exemptions in the IRA and 401(k) accounts, the homestead exemption was never objected to by Trustee or any creditor.

MEMORANDUM OF DECISION - 6

nonexempt funds to Orlando, which created and then increased the exempt equity in Debtors' homestead, are avoidable under § 548(a) as transfers made with the actual intent to hinder, delay and/or defraud creditors.[12]

## DISCUSSION AND DISPOSITION

Debtors argue, correctly, that the conversion of non-exempt assets into exempt assets on the eve of bankruptcy is not fraudulent per se. *Gill v. Stern (In re Stern)*, 345 F.3d 1036, 1044 (9th Cir. 2003). *Stern* stated: "Here, the principal evidentiary inference relied upon by the Trustee is that non-exempt assets were converted to exempt assets immediately prior to bankruptcy. . . . [T]his inference is insufficient as a matter of law to establish a fraudulent transfer." *Id.*

But, a recent Ninth Circuit Bankruptcy Appellate Panel decision explains that even though not per se fraudulent, prebankruptcy transfers of nonexempt assets into exempt assets are also not per se insulated from avoidance. *Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221 (9th Cir. BAP 2007), *aff'd* ___ F.3d ___, 2008 WL 5382453 (9th Cir. Dec. 24, 2008).[13] *Accord Fitzgerald v. Hawkins (In re*

---

[12] The $2,500.00 Edward Jones transfer and the $29,625.00 Orlando transfers clearly do not account for all of the $60,195.00 in refunds received the month of filing. However, the adversary proceeding before the Court addresses only potential avoidance of the described transfers.

[13] The portion of the Uniform Fraudulent Transfer Act ("UFTA") asserted by Beverly's trustee was that allowing avoidance of "actually fraudulent" transfers, *i.e.*, those made with actual intent to hinder, delay or defraud creditors. 374 B.R. 235. It is thus the same sort of actual fraud contention as Trustee raises here under § 548(a).

MEMORANDUM OF DECISION - 7

*Hawkins)*, 91 I.B.C.R. 54, 55 (Bankr. D. Idaho 1991) ("While the fact that [debtors] may have availed themselves of the annuity contract exemption on the eve of the filing of their bankruptcy case is not, in itself, conclusively fraudulent, Plaintiff is entitled to an opportunity to present other evidence of their fraudulent intent.  This proof may come from showing the existence of a variety of factors, or 'badges of fraud.'").

In *Beverly*, the BAP reversed a trial court's determination that the protection given to a marital settlement agreement and exemption planning generally also blocked the exercise of the trustee's avoidance powers including those under the UFTA and § 548.  374 B.R. at 229.[14]  The BAP stated:

> The bankruptcy planning dispute presented in these related appeals requires us to transit waters made turbulent by cross-currents of exemptions, fraudulent transfer, denial of discharge, and divorce. *We publish to dispel the myth that the toleration of bankruptcy planning for some purposes insulates such planning from all adverse consequences – it does not.*  In matters of bankruptcy and insolvency planning, supposed safe harbors from one danger are exposed to dangers from other quarters and may, in any event, be too small to shelter large capital transactions.

374 B.R. at 226 (emphasis added).

In *Beverly*, the BAP considered *Stern* and determined that:

> the *Stern* ruling was that, in the absence of any direct evidence regarding intent, the circumstantial evidence of repositioning assets

---

[14]  The BAP not only reversed the bankruptcy court's judgment for the debtor, it remanded the matter with instructions to enter judgment for the trustee.  374 B.R. at 246.

MEMORANDUM OF DECISION - 8

> from a (fully or partially) exempt IRA to an exempt pension plan before filing a short-lived chapter 11 . . . was "unspectacular" and inadequate, standing alone, to support a finding of actual intent to hinder, delay, or defraud creditors.

374 B.R. at 241. The BAP concluded that "*Stern* materially differs" from the situation in *Beverly*, in part because "the challenged transfer [in *Stern* did not] involve an entirely nonexempt asset; rather, it was a transfer of an exempt IRA to an exempt pension plan" and also because "there [was not in *Stern*] direct evidence probative of intent." *Id.*

*Beverly* was recently affirmed in part by the Ninth Circuit in an exceedingly brief decision. 2008 WL 5382453. As to transfer avoidance, the Ninth Circuit said:

> The BAP held that the Beverlys' transfer of assets through a marital settlement agreement was an avoidable transfer pursuant to 11 U.S.C. § 544(b) and [the UFTA]. The BAP also rejected the argument that our decision in *Gill v. Stern (In re Stern)*, 345 F.3d 1036 (9th Cir. 2003), allowed the transfer in this case. We have jurisdiction to consider the avoidance claims . . . and adopt as our own the well-reasoned BAP opinion, *In re Beverly*, 374 B.R. 221.

*Id.* In affirming *Beverly*, the Ninth Circuit adopted the BAP's reading of *Stern*.

As *Beverly* concludes, "[t]he perennial difficulty [is] that the boundary between a legitimate and a fraudulent exemption [is] difficult to discern. As explained in the contemporary *Collier* treatise, '[T]he distinction is often a close one and depends entirely on the facts.'" 374 B.R. at 244 (citing 1A Collier on Bankruptcy ¶ 6.11[3] (14th ed. 1978)). The upshot is clear, and not particularly

MEMORANDUM OF DECISION - 9

surprising. Facts matter. The prebankruptcy conversion of non-exempt assets to exempt assets is not per se fraudulent, but neither is it per se proper and insulated from scrutiny and possible avoidance. There is no absolute safe harbor for bankruptcy exemption planning.

Debtors, having analyzed *Beverly*, argue that the amounts converted in the present case to exempt status are far less than the $1,000,000 involved in *Beverly*, and do not amount to a sufficiently "large" capital transaction.[15] They further assert that Trustee has not alleged much if anything beyond the eve-of-filing timing. However, the "magnitude of transfer" issue must be viewed as case specific.[16] Here, Trustee notes that the tax refunds gathered by Debtors in the month before filing would have been sufficient to provide a substantial payment to creditors[17] and that, as a result of the conversion of those funds into homestead and IRA exemptions, the case was filed and noticed out as a "no asset" chapter 7.[18] Secondly, Debtors' failure to disclose their conduct and the substantial eve of

---

[15] *Beverly* stated that "[t]he reality is that cases finding discharge-disqualifying intent to hinder, delay, or defraud creditors typically involve some combination of large claims of exemption and overtones of overreaching." 374 B.R. at 245.

[16] During oral argument and responding to questions from the Court, Debtors' counsel was unable to identify a monetary amount that would be sufficiently "large" to be presumptively fraudulent, changing a transfer from permissible to "too much." Such an inability to identify a magic number stems from the fact that the determination is inherently case specific.

[17] Debtors scheduled $112,143.90 in nonpriority unsecured debt.

[18] Trustee later caused to be issued a notice of potential assets and request to file claims under Fed. R. Bankr. P. 3002(c)(5).

MEMORANDUM OF DECISION - 10

filing transfers of the refunds received is "a fact" that may be considered in addition to the "mere timing" of the conversion of assets.

In light of the authorities governing Rule 12(b)(6) motions discussed at the outset of this Decision, and given the presence of factual allegations beyond the mere timing of the conversion of assets, the Court concludes it would be error to dismiss the complaint as failing to state a claim.

The Motion will be denied by separate order.

DATED: January 16, 2009

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE